## ANNA M. SCHOEN ET AL. *vs*. THE NEW BRITAIN TRUST COMPANY, TRUSTEE.

First Judicial District, Hartford, March Term, 1930.

WHEELER, C. J., MALTBIE, HAINES, HINMAN and BANKS, Js.

Argued March 5th—decided June 2d, 1930.

*Jacob Schwolsky,* for the appellants (plaintiffs).

*Mortimer H. Camp* and *Margaret P. Camp,* for the appellee (defendant).

WHEELER, C. J. All of the exceptions based on the motion to correct but one, and this is of no material consequence, are defective in not stating the refusal of the court to find a material fact "which was an admitted or undisputed fact," or in finding a material

fact "without any evidence," and they also fail to state the ground or basis of each exception except as to six paragraphs. *DeFeo* v. *Hindinger*, 98 Conn. 578, 120 Atl. 314; *Morganelli* v. *Derby*, 105 Conn. 545, 548, 135 Atl. 911. For these reasons we do not consider them.

The plaintiffs abandoned the premises on October 20th, 1927, and the lease thereupon terminated. From August 20th, 1927, the plaintiffs considered and treated the lease as at an end and refused thereafter to pay rent. The finding is clear that the termination of the lease occurred through the plaintiffs' own wilful default and not through the action of the defendant. The reduction of the seats in the theater was due exclusively to the order of the public authorities, which neither party could prevent, and the removal of them by the defendant at its own expense was done with the consent of the plaintiffs.

The plaintiffs' recovery of the $15,000 payment depends upon the construction which may be given this provision of the lease: "The lessor hereby acknowledges the receipt of $15,000 dollars which is to be applied on the last year's payment." The only payments referred to in the lease are those for rent; "the last year's payment" obviously refers to the payment of rent—that of the last year of the term of the lease. The period of the lease was ten years; the last year's payment under the lease was $15,000. Two constructions of this provision are claimed, by the plaintiffs that it is a deposit or security, by the defendant that it is a prepayment of rent. The lease is characterized by a complete absence of anything, in terms or words, or by inference, indicating that the $15,000 was a mere deposit as security for the rent. It neither states for what the $15,000 was security, nor provides that there should be no breach of the performance for

which this amount is claimed to be security. No construction is open to the plaintiffs which will enable them to claim this to be security, unless there can be found in the lease the words "deposit for security," or their equivalent, and, in addition, words which signify in terms or by inference, for what the deposit was security. The lease does not provide for the return of the $15,000, nor can there be found in it the intendment of the parties by the payment to provide a security for the performance by the lessee of his obligation under the lease. The lessor was leasing a theater, a property unsuited for another business, for a long period. He must have had in mind the changeable character of the business and the location, and of the consequent risk to the owners of the property. He must have known that if the lease were cancelled, or the lessee abandoned his lease, for a considerable period the theater might be vacant, or a suitable tenant be hard to obtain and damage to his property might ensue. It was most reasonable for the lessor to protect himself against loss of rental and damage to his property by a provision, such as this—for the payment of the last year's rent. If the $15,000 was mere security for rent, the lessee might default in the middle of the term and the lessor be compelled to evict him and recover the actual rent due and pay back the deposit, or continue to suffer the persistent default in rent for the whole or a part of the deposit and return the balance. The property of the lessor or its business uses would be apt to be seriously prejudiced if the lessee could act in this way. The construction of this amount as rent rather than as a deposit for security is the most reasonable one from the standpoint of the lessor and not unfair to the lessee who must, at the inception of the lease, have intended to perform the covenants and conditions of this lease.

Whether it be a deposit for security, or a payment for rent, is dependent upon the intention of the parties as manifested in the terms of the lease construed in the light of the surrounding circumstances. In this case the intention clearly makes of this a payment of rent. The finding is explicit, it was paid by the lessee and accepted by the lessor "as the last year's rent paid in advance." If the $15,000 was a deposit for security, the plaintiffs would be entitled to recover the sum deposited less the amount of rent due and unpaid at the time of the termination. If it was a payment of rent in advance, the authorities are divided as to whether it belongs to the lessor upon the termination of the lease by the default or abandonment of the lessee, but the weight of authority holds that it belongs to the lessor. We think this to be the better rule and one whose adoption in this case in view of the unequivocal character of the finding is of necessity inevitable.

As a part of the contract of lease the parties agreed that upon the performance by the lessee of the covenants of the lease the $15,000 would be applied to the payment of the last year's rent—it thus became and was a part of the consideration of the lease; to such a contract the law attaches the condition that upon default of the lessee to perform the covenants of the lease resulting in its termination or its abandonment by the lessee the money deposited becomes the property of the lessor. We do not regard the lessee's breach as a forfeiture of the deposit, but as a payment of a part of the consideration of the lease. It was an advance payment of rent for the last year of the lease in part performance of the contract of lease. Rent paid in advance at the beginning of the lease in conformity with its terms becomes upon such payment the property of the lessor. The same conclusion must be reached as to any rent paid in advance whether it be

for a period of time at the middle of the lease or for the last year of the lease. In either case it becomes the property of the lessor as soon as the period to which the rent is applicable arrives. When the default of the lessee makes impossible his performance of the contract of lease the law accelerates the time when the advance rental becomes the property of the lessor to the time of termination of the lease. The large majority of our courts which have been required to pass upon this question have established the rule to which we subscribe: The termination of a lease by the default of a lessee, who has in accordance with the terms of the lease made an advance payment of rent before such payment was to be applied as rent, automatically vests the ownership of such advanced payment of rent in the lessor upon the occurrence of the termination, in the absence of provision in the lease leading to a contrary disposition.

*Galbraith* v. *Wood,* 124 Minn. 210, 216, 144 N. W. 945, thus states the rule: "In case the rent has been paid in advance under a stipulation that it shall be so paid, and the landlord reenters for conditions broken, even in the absence of an agreement to that effect, the landlord is entitled to retain the rent so paid, though the re-entry is before the expiration of the period for which the rent was paid." See also *Bonfils* v. *Ledoux,* 266 Fed. 507,511; *Evans* v. *McClure,* 108 Ark. 531, 536, 158 S. W. 487; *Rockwell* v. *Eiler's Music House,* 67 Wash. 478, 122 Pac. 12; *Forgotston* v. *Brafman,* 84 N. Y. Supp. 237; *Kelly* v. *Stem,* 140 N. Y. Supp. 486; *Phegley* v. *Enke's City Dye Works,* 127 Ore. 539, 546, 272 Pac. 898; *Peebles & Co.* v. *Sherman,* 148 Minn. 282, 181 N. W. 715; *Barrett* v. *Monro,* 69 Wash. 229, 124 Pac. 369; *Gordon* v. *Harris,* 94 Cal. App. 682, 271 Pac. 779; *Wetzler* v. *Patterson,* 73 Cal. App. 527, 238 Pac. 1077; *Pigg* v. *Kelley,* 92 Cal. App.

329, 268 Pac. 463; *Hepp Wall Paper & Mercantile Co.* v. *Deahl,* 53 Colo. 274, 125 Pac. 491; 1 Tiffany on Landlord & Tenant, p. 1179; 36 Corpus Juris, 296 (§ 1064b); 16 R. C. L., pp. 931, 1137; notes to 50 L. R. A. (N. S.) 1034, and Ann. Cas. 1915B, 613.

Cases which are usually cited as maintaining a contrary doctrine, *Carson* v. *Arvantes,* 10 Colo. App. 382, 50 Pac. 1080, and *English* v. *Richardson,* 80 N. H. 364, 117 Atl. 287, disclose in their facts clear cases of deposits for security.

The leading case which adopts reasoning and reaches a conclusion antagonistic to the general authority is *Cunningham* v. *Stockton,* 81 Kan. 780, 106 Pac. 1087. The ground of the decision is stated in these words: "The lease did not contain an express statement that the money advanced should constitute a deposit to insure performance by appellee, but the advancement of so large an amount, the payment of the same before the construction of the building was begun and about six months before possession could be obtained and the provision that the amount advanced should be applied on the rental for the last year of the term clearly indicate that it was a deposit to insure performance by appellee. Now the lease did not provide that a failure to pay rent when due should forfeit the cash deposit nor that it should be forfeited for any reason." Its facts measurably distinguish it from the case before us. Aside from that, the reasoning of the opinion is at variance with that of this opinion and of the decisions in other jurisdictions on which we rely. *Virginia Amusement Co.* v. *Mid-City T. & S. Bank,* 220 Ill. App. 147, and *Johnson* v. *Englestein,* 236 Ill. App. 215, follow *Cunningham* v. *Stockton, supra.* We find no other cases which follow that case whose facts do not show them to be cases of "deposit as security."

We hold that the $15,000 payment was an advance

payment on rent for the last year of the lease, which the lessee's default prevented from being applied in accordance with the terms of the lease, and in consequence this payment became upon the termination of the lease the property of the lessor or of his testamentary representative and that the plaintiffs who have succeeded to the rights of the lessee cannot recover the payment so made. In view of this conclusion we do not determine the other question raised on this appeal as to whether this action could in any event be maintained against the defendant trustee.

There is no error.

In this opinion the other judges concurred.